## CHRISTY et ux. v. GUILD et ux.

No. 6320.   Decided January 22, 1942.   (121 P. 2d 401.)

314

See 27 R. C. L., 661 (8 Perm. Supp. 5992.) ; 66 Vendors and Purchasers, sec. 489.

*J. D. Skeen* and *E. J. Skeen,* both of Salt Lake City, for appellants.

*H. L. Mulliner* and *H. G. Metos,* both of Salt Lake City, for respondents.

McDONOUGH, Justice.

This is an unlawful detainer action, originally commenced in the City Court of Salt Lake City, for the restitution of certain premises in the possession of Edward L. Guild and Mabel C. Guild, his wife, under a contract of sale, from John Christy and Kathryn E. Christy, his wife. Under the contract, entered into in 1935, the Guilds were to pay $3,200 for the property in monthly installments of $30, including both principal and interest. They further agreed to make certain improvements on the front and rear of the house located on the property and to pay all taxes and assessments and keep the property insured against fire.

On April 30, 1940, respondents served appellants with notice that in accordance with the terms thereof, the contract would be terminated for failure (1) to make monthly installments totalling $130, (2) to make the improvements provided for, and (3) to pay the taxes and insurance in the amount of $297.20, unless said payments, with interest, and said improvements were made before May 12, 1940. The notice concluded:

"Unless you [comply by May 12] you shall, in accordance with with the provisions of said contract, and by the election of said Sellers, forfeit as liquidated damages all payments heretofore made by you on said contract and will become a tenant at will of the said John Christy and Kathryn E. Christy of the real property."

Nothing was done to comply with the conditions of the notice; and on the 15th of May, 1940, a notice to quit was served on appellants.

Upon failure of the Guilds to vacate, this action was commenced. The complaint, in addition to setting out the above facts, further alleged:

"That the plaintiffs are entitled to the immediate possession of said premises. That the defendans have failed, refused and neglected to surrender said premises and still continue in possession thereof and still refuse to surrender the same to the plaintiffs. That the monthly value of the rents and profits of said premises is the reasonable sum of $75.00."

Then followed a prayer for restitution of the premises and for treble damages for the unlawful detention.

Appellants answered, admitting the allegations of the complaint as to the existence and terms of the contract of sale. As to the asserted defaults in the performance of the contract, however, it was alleged (1) that the provisions with respect to improvements were waived; (2) that a note had been given for the payment of taxes and insurance upon which note payments had been made; and (3) that payments on the contract had been made to and including March 31, 1940, and that

"before the institution of this suit they [defendants] tendered to the said plaintiffs the total amount due upon said contract, exclusive of the said note, to wit: the sum of $130."

The answer further set out that appellants had made improvements on said property of the approximate cost and value of $2,000; that they had made 49 payments upon the contract of sale from March 16, 1935, to March 31, 1940, "in various amounts aggregating a total of $1,647.67." The other allegations of the complaint were denied, except defendants admitted

"that they refused to surrender the premises to the plaintiffs and allege that they have a legal right to retain possession of the same."

The case was first tried in the city court and then appealed to the district court, where it was tried before a jury. At the conclusion of the evidence the court, on motion, directed a verdict for respondents, granting restitution of the premises and assessing damages in the sum of $137.50,

which sum, in accordance with the prayer of the complaint, was trebled.

This appeal presents two problems for our consideration: (1) Whether in view of the evidence the issues as to the alleged defaults of appellants should have been submitted to the jury; and (2) whether at all events the trial court should have considered the "equities" between the parties and adjudged that appellants were entitled to some reimbursement for the improvements made and for the large amount paid on the contract (approximately one-third of the principal sum, plus interest).

We conclude, from a review of the record, that the lower court did not err in refusing to submit to the jury the question of whether there had been a default in the performance of the terms of the contract. As to the delinquency in making payments on the contract amounting to $130, it has never been urged that such default did not exist. Nor was any attempt made to make up such delinquency until after the notice to vacate had been served on appellants subsequent to the termination of the contract by respondents. It is argued, however, that there had been a waiver of the term of the contract as to time being of the essence thereof and that reasonable notice was not given of respondent's intention to enforce the contract in this respect for failure to make the payments as stipulated. Payments were not made strictly in accordance with the terms of the contract from the very beginning. But commencing with January, 1940, the appellants were given notice of intention to enforce the forfeiture provisions of the contract if payments were not made in time, and appellants promised to make the required payments. Notwithstanding, on April 30, 1940, appellants were in arrears on monthly installments for part of December, 1939, and for all of January, February, March, and April, 1940. Appellants point to the fact that a payment was made on the contract on March 31, 1940, as an indication of waiver of defaults in making the monthly installments. This payment, applied

on past due installments, brought the payments up to and including part of December, 1939.

We are of the opinion that under the state of facts here presented, the acceptance of the payment of March 31, 1940, on past due installments did not for several reasons result in a waiver. In the first place the contract of the parties specifically provided that the acceptance by ■ the vendors from the vendees of payments thereunder other than according to the terms of the contract would in no way alter the terms thereof as to forfeiture. Discussing a similar provision in a contract for the sale of realty the California District Court of Appeals in *Brown* v. *Chowchilla Land Co.,* 59 Cal. App. 164, 210 P. 424, 427, hearing denied by Supreme Court, stated:

"If the parties had expressly provided that the acceptance by the vendor of payments after they were due should not be deemed a waiver of the provision that time is of the essence of the contract and should not be considered a relinquishment of the vendor's right to claim a forfeiture for any subsequent default on the part of the vendee, then it would not be illegal or inequitable for the vendor to insist upon forfeiture for any such subsequent default. The requirement of notice after the receipt of overdue payments without objection is based upon the equitable consideration that by his conduct the vendor has led the vendee into the belief that the former will continue to waive the strict performance of the contract. The principle of equitable estoppel is involved. But the reason for the rule does not exist where the parties have expressly agreed that such waiver shall not affect any subsequent breach or relinquish the right of the vendor to insist thereafter upon a strict observance of the terms of the contract. We think the parties could not have more effectually provided that a waiver of a breach of the contract should not be held to have occurred by reason of the forbearance of the vendor to take advantage of any prior default.

"The parties could not fail to understand from the particular covenant in question that the acceptance of any overdue payment or payments was to be regarded as an indulgence to the vendee, but as to the future the whole contract remained in full force and effect and rendered the vendee subject to the penalty of forfeiture for any default thereafter. We may repeat that the right to declare a forfeiture for the failure to pay on time is one of the covenants of the contract and hence it is a part of the agreement which the parties have in effect

declared shall not be deemed waived or affected by any previous default. The case therefore stands as though there had been no belated acceptance of payments, and since there were several installments long overdue at the time the action was brought, plaintiff was clearly in default, and the right of forfeiture existed in behalf of defendant, no affirmative action being required on his part to work a cancellation."

Secondly, after the notice to pay up was given in January, the payment made was on delinquencies existing prior thereto.

"The acceptance of a past due installment or installments does not affect the notice, previously given, that in the future strict performance will be required." 66 C. J. 483, Sec. 383.

Of a like state of facts, the court in *Watkins* v. *Warren*, 122 Cal. App. 617, 10 P. 2d 500, 502, said:

"But there is no merit to appellants' contention that, by the acceptance after October 10, 1928, of further installments on these past-due payments, respondents waived the demand of October 10, 1928, restoring the time is of the essence clause. This notice is in no way affected by acceptance of past-due payments which were past due at the time the notice was given, nor is it retroactive. The notice is intended to affect and can affect only such payments as may become due after the date of the notice. If plaintiffs have accepted any past-due payment which became due after October 10, 1928, they have again waived the time is of the essence clause. The only payments set out in appellants' amendment to the answer by which they claim a waiver are these which were due and in default before the date of plaintiffs' notice. The authorities cited, supra, are clear on this point."

See, also, as to default in making a monthly payment, *Fausett* v. *General Electric Contracts Corp.*, 100 Utah 259, 112 P. 2d 149. See *Cassiday* v. *Adamson*, 208 Iowa 417, 224 N. W. 508.

As we view the evidence, there was nothing to submit to the jury on the issue of default. There was a clear breach of the contract in regard to the monthly installments due under the contract. We, therefore, need not consider the effect of the failure to make the improvements ■ provided for by the contract, nor do we need to de-

termine the legal significance of the taking of a promissory note for the delinquent taxes and insurance which appellants urge constituted a payment of these items. What we do determine is that appellants defaulted in the performance of the terms of the contract, as a result of which after giving appellants an opportunity to perform, respondents, in accordance with the specific terms thereof, terminated the same and declared appellants to be tenants at will; that in view of the evidence the trial court properly directed a verdict in favor of respondents determining that they had the right to possession of the premises involved.

The second problem involves a determination of whether in an unlawful detainer action brought pursuant to the provisions of Section 104-60-3, R. S. U. 1933, the defendant may raise and the trial court consider the "equities" which may exist between the parties. It is clear that this action is strictly one in unlawful detainer. It was so treated by the parties and by the court, the latter trebling the damages found, as provided for in such actions. Appellants, however, contend that since a forfeiture of a contract of sale of real property is involved in this case, and since there has been a considerable amount paid on the contract by appellants, in addition to the making of improvements of the alleged value of $2,000, the court should consider this as one element in determining whether respondents are entitled to possession of the premises or were entitled to terminate the contract. To support this contention cases are cited to the effect that the court in an equitable action will take into consideration what has been paid upon a contract for the sale of real property in determining whether a forfeiture provision of the contract will be enforced by it. See *Croft* v. *Jensen*, 86 Utah 13, 40 P. 2d 198. On the other hand, we are confronted with the contention by respondents that in a summary action such as this for an unlawful detainer the only issue presented to the court is the right to possession where the relationship of landlord and tenant exists and that no equitable defense may be interposed or

considered. *Forrester* v. *Cook,* 77 Utah 137, 292 P. 206; *Dunbar* v. *Hansen,* 68 Utah 398, 250 P. 982; *Yukon Inv. Co.* v. *Crescent Meat Co.,* 140 Wash. 136, 248 P. 377; *Aegerter* v. *Hayes,* 55 S. D. 337, 226 N. W. 345; *Grylls* v. *Hergiton,* 268 Mich. 35, 255 N. W. 334; *William Weisman Realty Co.* v. *Cohen,* 157 Minn. 161, 195 N. W. 898. Contra, *Schubert* v. *Lowe,* 193 Cal. 291, 223 P. 550.

No question has been raised in this case as to the right to bring an action for unlawful detainer by a vendor against a defaulting vendee. The cases are not in harmony as to whether such may be done. See *Putnam* v. *McClain,* 198 Iowa 287, 199 N. W. 261; *Cassiday* v. *Adamson,* 208 Iowa 417, 224 N. W. 508; *Music* v. *De Long,* 209 Iowa 1068, 229 N. W. 673; *Clark* v. *Dye,* 158 Minn. 217, 197 N. W. 209; *Stevens* v. *McDowell,* 151 Kan. 316, 98 P. 2d 410; *Schroeder* v. *Woody,* Or., 109 P. 2d 597.

In those jurisdictions where in such a case an action for unlawful detainer lies, the practice under appropriate fact situations is to bring a suit in equity to enjoin the detainer action and determine the equities between the parties. See, *Stubbs* v. *Austin,* 285 Ill. App. 535, 2 N. E. 2d 358; *William Weisman Holding Co.* v. *Miller,* 152 Minn. 330, 188 N. W. 732; *Security Inv. Co.* v. *Meister,* 214 Mich. 337, 183 N. W. 183. In this jurisdiction, it appears to be the common practice, under such a contract as is here involved, to bring an unlawful detainer action against a defaulting vendee. See, *Forester* v. *Cook,* supra.

In the present action, respondents in their complaint set out the contract, which provided that upon default of the vendees the vendors might elect to terminate the contract and upon such termination might retain as liquidated damages the payments theretofore made by the vendees; the latter thereupon becoming tenants at will of the former. Appellants contend, however, that the provision relative to liquidated damages is in fact a penalty provision and hence void.

Assuming that such an issue may properly be raised in an action such as this, we must conclude that the forfeiture provision of the contract is just what it purports to be and not a penalty. The contract provided for no down payment. The monthly installments to be made were ■ $20 for the first six months; $25.00 per month the next six months; and $30 per month from then on until the entire sum had been paid. While appellants offered to prove that $2,000 worth of improvements had been made on the premises, such proof would not aid their cause since it was admitted that the net monthly income from the premises was $75. Such a monthly income would more than compensate for the improvements made, plus the monthly installments. In view of the use value of the premises as compared to the monthly installment to be made, including improvements also made, we cannot say that the forfeiture provision was such that the trial court should have held it to be a penalty and refused to permit respondents to maintain an action based on the invoking of such provision of the contract. *Dopp* v. *Richards*, 43 Utah 332, 135 P. 98.

The judgment of the trial court is affirmed. Costs to respondents.

WOLFE, LARSON, and PRATT, JJ., concur.

MOFFAT, Chief Justice (concurring).

I concur with the understanding that the unlawful detainer action does not cut off the right of the purchaser to bring suit to have equities determined if he claims equities in his favor.