2001 UT 80

**Dorann MITCHELL, Plaintiff and Petitioner,**

v.

**Jesse CHRISTENSEN and Betty Christensen, Defendants and Respondents.**

No. 20000593.

Supreme Court of Utah.

Aug. 31, 2001.

Scott B. Mitchell, Salt Lake City, for plaintiff.

George E. Harris, Jr., Jennifer Ward, Salt Lake City, for defendants.

RUSSON, Associate Chief Justice:

¶ 1 Plaintiff Dorann Mitchell ("Mitchell") seeks certiorari review of the Utah Court of Appeals' decision upholding the trial court's dismissal of Mitchell's claim against defendants Jesse and Betty Christensen (the "Christensens") for fraudulent nondisclosure. Mitchell sued the Christensens for failing to disclose the existence of leaks in their backyard swimming pool prior to selling their property to Mitchell. We reverse and remand.

## BACKGROUND

¶ 2 On September 25, 1995, Mitchell purchased a home from the Christensens that included a backyard swimming pool. In connection with the sale of the property, the parties executed a real estate purchase contract giving Mitchell the right to inspect the property herself and to hire a professional home inspector to inspect the property. Accordingly, Mitchell inspected the property herself on a number of occasions prior to closing the purchase transaction. During each inspection, Mitchell found the backyard swimming pool full of water with no visible indications that the pool leaked or was defective in any way.

¶ 3 Moreover, in addition to personally inspecting the property, Mitchell hired a professional home inspector, AmeriSpec of Salt Lake ("AmeriSpec"), to examine the property. AmeriSpec inspected the property and provided Mitchell with an inspection report. Like Mitchell, AmeriSpec found the swimming pool to be in working order with no visible indications that the pool leaked. However, the inspection report provided by AmeriSpec was limited in scope. Specifically, the inspection report stated:

> Our review is limited to above ground or visible items only. It is an operational inspection of the accessible equipment and components and is therefore limited in scope. If concerned, client is advised to have a licensed pool company perform an in-depth review and/or service.

Because Mitchell's personal inspection and AmeriSpec's subsequent professional inspection, although limited in scope, did not uncover any problems whatsoever with the swimming pool, Mitchell did not hire a licensed pool company to perform an "in-depth review and/or service." However, after closing the purchase transaction, a number of leaks in both the piping and the body of the swimming pool were discovered.

¶ 4 After discovering the leaks in the swimming pool, Mitchell filed a complaint in the district court, asserting a claim against the Christensens for fraudulent nondisclosure.[1] Specifically, Mitchell alleged that at the time of the sale of the property (1) the pool was leaking, (2) the Christensens knew of the existence of the leaks, and (3) the Christensens had a legal duty to disclose these defects prior to selling their property to Mitchell, which they failed to do.

¶ 5 The Christensens denied Mitchell's allegations that the pool leaked on or before the sale of the property and that, if it did, they were aware of any leaks. However, for the purpose of summary judgment, the Christensens asked the trial court "to as-

---

1. In addition to her fraudulent nondisclosure claim, Mitchell also asserted a claim against the Christensens for fraudulent concealment, which, like her fraudulent nondisclosure claim, was dismissed by the trial court. On appeal, the court of appeals upheld the trial court's dismissal of Mitchell's fraudulent concealment claim. In this review, Mitchell does not argue that the court of appeals erred in upholding the trial court's dismissal of this claim, and we therefore do not address it.

sume that [they] *did* know about the existence of leaks in the pool" at the time of the sale of the property, arguing that even if they knew of the leaks, they had no duty to disclose these defects and therefore, based on the doctrine of caveat emptor (let the buyer beware), Mitchell's complaint must be dismissed. (Emphasis in original.)

¶ 6 On March 18, 1999, the trial court granted the Christensens' motion for summary judgment. The trial court held: "[Mitchell] had a duty and opportunity to conduct a thorough inspection of the pool and failed to do so. Under these circumstances even if [the Christensens] knew of the defects, based on caveat emptor it was not [the Christensens'] legal duty to disclose."

¶ 7 Mitchell appealed the trial court's ruling,[2] arguing to the court of appeals that the trial court erred in its determination that the Christensens had no duty, as a matter of law, to disclose the known leaks in the swimming pool. Mitchell argued that because her personal inspection and AmeriSpec's subsequent professional inspection did not uncover any potential defects in the pool, she did not act unreasonably in declining to hire a second professional inspector to conduct an in-depth review of the pool. The court of appeals, however, affirmed the trial court's grant of summary judgment in favor of the Christensens, holding that Mitchell "failed to exercise reasonable care when she did not have an in-depth inspection of the swimming pool completed, [and therefore,] the trial court correctly granted summary judgment on this issue." *Mitchell v. Christensen,* No. 990321, slip op. at 2, 2000 WL 33249257 (Utah Ct. App.2000). Mitchell argues that the court of appeals erred and seeks certiorari review.

## STANDARD OF REVIEW

¶ 8 "When exercising our certiorari jurisdiction, 'we review the decision of the court of appeals, not of the trial court.'" *Macris & Assocs., Inc. v. Neways, Inc.,* 2000 UT 93, ¶ 17, 16 P.3d 1214 (quoting *Carrier v. Pro–Tech Restoration,* 944 P.2d 346, 350 (Utah 1997)). Moreover, because a summary judgment presents questions of law, we ac-

cord no particular deference to the court of appeals' ruling; we review it for correctness. *See Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989).

## ANALYSIS

¶ 9 The elements of a claim for fraudulent nondisclosure were discussed by this court in *First Security Bank of Utah v. Banberry Development Corp.,* 786 P.2d 1326 (Utah 1990). Specifically, this court stated:

"One of the fundamental tenets of the Anglo–American law of fraud is that fraud may be committed by the suppression of the truth ... as well as the suggestion of falsehood....

Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other contracting party...."

*Id.* at 1328 (quoting *Elder v. Clawson,* 14 Utah 2d 379, 382, 384 P.2d 802, 804 (1963)). Thus, to prevail on a claim of fraudulent nondisclosure, the plaintiff must show (1) that the nondisclosed information is material, (2) that the nondisclosed information is known to the party failing to disclose, and (3) that there is a legal duty to communicate.

¶ 10 In the instant case, it is undisputed that the undisclosed information—leaks in the swimming pool—was material. Moreover, the parties have assumed for the purpose of summary judgment that the Christensens knew of the leaks in the swimming pool prior to the sale of their property to Mitchell. Therefore, the only issue here is whether, assuming the Christensens knew of the leaks, they had a legal duty to disclose these defects to Mitchell.

¶ 11 A seller of realty is not obligated to reveal all that he or she knows about the property involved. Rather, as we explained in *Banberry,* the duty to communicate or disclose in a vendor-vendee transaction exists only where a defect is "'not discoverable by reasonable care.'" 786 P.2d

---

**2.** Mitchell appealed to this court, which poured the case over to the court of appeals pursuant to

section 78–2–2 of the Utah Code. *See* Utah Code Ann. § 78–2–2(4) (1996); Utah R.App. P. 42(a).

at 1331 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* 739 (5th ed.1984)). If a defect can be discovered by reasonable care, the doctrine of caveat emptor prevails and precludes recovery by the vendee. Indeed, in *Utah State Medical Ass'n v. Utah State Employees Credit Union,* this court stated:

> The clear majority of the courts have deemed it reasonable to hold the purchaser to the caveat emptor doctrine in the purchase of used housing. The parties know the article is not new, and the buyer who has an opportunity to inspect the article is placed on the alert for defects which might affect the article's quality, condition or fitness.

655 P.2d 643, 645 (Utah 1982).

■ ¶ 12 Although we have not had occasion to expressly say so, courts in other jurisdictions have held that in determining what constitutes reasonable care in the discovery of defects, the proper standard is whether the defect would be apparent to ordinary prudent persons with like experience, not to persons with specialized knowledge in the field of construction or real estate. *See, e.g., Tipton v. Nuzum,* 84 Ohio App.3d 33, 616 N.E.2d 265, 268 (1992) (holding that "buyers should be accorded 'the benefit of comparison with ordinarily prudent persons of their station and experience confronted by the same or similar circumstances' " (quoting *Traverse v. Long,* 165 Ohio St. 249, 135 N.E.2d 256, 259 (1956))); *Quashnock v. Frost,* 299 Pa.Super. 9, 445 A.2d 121, 127 (1982) (finding duty of disclosure where defect would not have been discoverable by an *"ordinary inexperienced person"* (emphasis added)); *see also, e.g.,* Restatement (Second) of Torts § 551 cmt. l, illus. 9 (1977) (stating that duty to disclose defects exists where "A knows that B is not aware of [the defect], that he could not discover it by an *ordinary inspection,* and that he would not make the purchase if he knew it" (emphasis added)); 37 Am.Jur.2d *Fraud and Deceit* § 158, at 217 (1968) (stating that the buyer of property cannot charge the seller with fraud for failure to disclose a defect if the defect "could be discovered by such an examination as a careful and prudent

man would ordinarily make"). We agree with the reasoning of the above courts because to decide otherwise would force purchasers to hire numerous expert home inspectors to search for hidden defects, or forfeit any claim for fraudulent nondisclosure.

¶ 13 However, although the proper standard for the discoverability of a defect is that of an ordinary prudent person, this does not mean that inspection by an expert will never be required. Indeed, under certain circumstances, a reasonably prudent buyer should be put on notice that a possible defect exists, necessitating either further inquiry of the owner of the home, who is under a duty not to engage in fraud, *see Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 713 P.2d 55, 59 (Utah 1986) (describing elements of negligent misrepresentation); *Dugan v. Jones,* 615 P.2d 1239, 1246 (Utah 1980) (describing elements of fraudulent misrepresentation), or inspection by someone with sufficient expertise to appraise the defect.

¶ 14 In the instant case, Mitchell inspected the swimming pool herself on multiple occasions prior to closing the purchase transaction. During each of those inspections, Mitchell found the pool full of water with no visible indications that the pool leaked. Moreover, in accordance with the purchase contract, Mitchell hired a professional home inspector, AmeriSpec, to inspect the pool. AmeriSpec, like Mitchell, found the pool to be in working order and, as stated in the inspector's affidavit, "found nothing during the course of [the] inspection that would have indicated that the pool was leaking." Nevertheless, because AmeriSpec limited its inspection of the swimming pool to accessible or "above ground" components, the court of appeals held that Mitchell acted unreasonably in failing to hire a second professional inspector to conduct an "in-depth inspection" of the inaccessible components of the swimming pool. *Mitchell v. Christensen,* No. 990312, slip op. at 2, 2000 WL 33249257 (Utah Ct.App.2000).

¶ 15 However, there is nothing in the record to indicate that a reasonably prudent buyer would have been put on notice of a possible defect with the below ground or

inaccessible portions of the swimming pool, necessitating an "in-depth" inspection. Indeed, although AmeriSpec's inspection report was limited in scope, it proclaimed the pool to be in working order and did not recommend an "in-depth review." Rather, the inspection report merely stated: *"If concerned,* client is advised to have a licensed pool company perform an in-depth review and/or service." (Emphasis added.) Yet, as noted above, nothing in Mitchell's multiple personal inspections or AmeriSpec's subsequent professional inspection should have "concerned" Mitchell, as both inspections indicated that the pool was in working order and was free from leaks. Indeed, all that can be said of the disclaimer contained in AmeriSpec's inspection report is that it put Mitchell on notice that inaccessible components of the swimming pool existed and could not be inspected. Nothing in the inspection report, however, can reasonably be construed as stating that there were any problems whatsoever with these inaccessible components. And as this court stated in *Elder v. Clawson,* "There [is] no occasion for [purchasers] to make an independent investigation of a [problem] of which they kn[o]w nothing." 14 Utah 2d 379, 382, 384 P.2d 802, 804 (1963).

¶ 16 Therefore, in view of the foregoing, we conclude that the Christensens had a legal duty to disclose the leaks in their swimming pool prior to the sale of their property to Mitchell, assuming it is determined on remand that the Christensens knew of the existence of the leaks. The leaks in the swimming pool could not have been discovered through reasonable care—as evidenced by the fact that Mitchell's multiple personal inspections, and AmeriSpec's subsequent professional inspection, did not uncover any indication whatsoever that the pool was leaking. Moreover, there is nothing in the record to indicate that an ordinary prudent buyer would have been put on notice of a possible defect with the inaccessible portions of the swimming pool, necessitating either further inquiry of the owner of the home or inspection by someone with sufficient expertise to appraise the defect. Accordingly, the decision of the court of appeals is reversed, and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

¶ 17 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON's opinion.